# ANTHONY WILLIAM HAZELL *v.* STATE OF MARYLAND

[No. 486, September Term, 1970.]

*Decided June 2, 1971.*

The cause was submitted on briefs to MURPHY, C. J., and MOYLAN and POWERS, JJ.

Submitted by *John M. Brennan* for appellant.

Submitted by *Francis B. Burch, Attorney General, James L. Bundy, Assistant Attorney General, Arthur A.*

*Marshall, Jr., State's Attorney for Prince George's County,* and *Robert W. King, Assistant State's Attorney for Prince George's County,* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant was charged by juvenile petition with being a delinquent child under Maryland Code, Article 26, Section 70, *et seq.* by reason of having allegedly committed, on October 27, 1969, three assaults with intent to murder and one armed robbery. He was then seventeen years of age. The State filed a motion for waiver of juvenile jurisdiction and an evidentiary hearing was held before the Juvenile Master who held the matter *sub curia* until he could obtain a report from the Department of Juvenile Services. The Department recommended against the waiver and the Master, concurring in this judgment, denied the State's motion. The State filed exceptions to the Master's recommendations and an evidentiary hearing was held by the court, Taylor, J., who sustained the State's exceptions and ordered that juvenile jurisdiction be waived. This appeal from that determination followed. See Article 26, Section 70-25.

Appellant claims (1) that he was deprived of due process of law when the hearsay testimony of the investigating police officer, Detective Robert Borruso, was received in evidence over his objection at the hearing before the Master, and later considered by the court in reaching its determination to order the waiver of jurisdiction, (2) that the court was prejudicially influenced by hearsay information contained in the report of the Department of Juvenile Services, and (3) that by the court's acceptance of such hearsay testimony, he was denied his constitutional right to confront and cross-examine the witnesses. Underlying appellant's contentions is the claim that the Supreme Court's decisions in *Kent v. United States,* 383 U. S. 541, and *In Re Gault,* 387 U. S. 1, constitutionally require the State to afford the same safeguards of due process of law at waiver hearings in juvenile cases as

are required in the trial of criminal cases. He urges that such waiver hearings are of critical importance since, if jurisdiction is waived to the criminal court, the juvenile will be subjected to a guilt determining process at a criminal trial which could result in penal incarceration —in his case up to sixty years. Because of these consequences, appellant specifically urges that the strict rules of evidence governing criminal trials must be applied in such waiver determinations; that the State must be required to prove its case for waiver beyond a reasonable doubt, and not merely by the civil standard of a preponderance of the evidence.

The specific factors to be considered in determining the question whether to waive juvenile jurisdiction to the criminal court are set forth in Article 26, Section 70-16, as follows:

"(1)  Age of child.
(2)  Mental and physical condition of child.
(3)  The child's amenability to treatment in any institution, facility, or programs available to delinquents.
(4)  The nature of the offense.
(5)  The safety of the public."

To aid it in making its determination, "the court may request that a study be made concerning the child, his family, his environment, and other matters relevant to the disposition of the case." Section 70-16 (e). In a similar vein, Maryland Rule 911 b provides that where the court orders that "a waiver investigation be made," the report of such investigation "shall include all social study records that are to be made available to the court at the hearing." The Rule further provides that such report "shall be made available to counsel for the parties before or at the commencement of the [waiver] hearing."

Section 70-18 provides, in effect, that while a determination that a child is delinquent must be based upon allegations proven beyond a reasonable doubt, in all other instances, presumably including waiver of jurisdiction

hearings, the allegations need only be proved by a preponderance of the evidence. Rule 912 c similarly provides that while the rules of evidence applicable to criminal cases shall apply to delinquency adjudications, the rules of evidence applicable to civil cases shall apply in all other juvenile hearings.

Under Maryland Rule 908 e a Juvenile Master may be assigned by the court to hear cases involving waivers of juvenile jurisdiction. The Master is required at the conclusion of the hearing to "announce his findings and recommendations," which are thereafter transmitted to the court. The court may, in the absence of exceptions taken by either party, confirm or modify the Master's recommendations or remand for further proceedings. Where exceptions are filed to the Master's recommendations, as permitted by Rule 908 e 3, the matter is set for hearing before the court, at which time "the judge shall hear the entire matter or such specific matters as set forth in the exceptions *de novo*."

At the waiver hearing before the Master in this case, two of the three assault victims, though summoned by the State, were unable to attend for medical reasons. The State produced Detective Borruso to testify with respect to his investigation of the offense. Appellant promptly objected to any hearsay testimony that Borruso might give, and also to any identification that Borruso might make of him as the person who committed the offenses. As a result of appellant's repeated objections, Borruso's testimony was limited to a bare outline of what his investigation revealed, namely, that two boys entered a store and held it up; that one of the boys had a gun and, in the course of the robbery, shot one employee in the back or side; that he also shot a customer, and fired other shots, one of which ricocheted and caused fragments to strike a third victim. Appellant's father and mother and a family friend testified with respect to appellant's prior good conduct. The report of the Department of Juvenile Services covering the period from appellant's initial detention in the Waxter Children's Center through the date

of the hearing before the Master, was subsequently received in evidence. Much of it was favorable; some was not. The data included had been assembled from social workers, a youth supervisor, a school principal, a probation officer, and an assistant departmental superintendent. It was comprehensive and covered appellant's general conduct, school and health record, his personality, and his home and economic conditions. The report indicated that during his detention at the Waxter Center, his attitude was one of "bare tolerance"; that he showed no anxiety with respect to the charges; that he was confident that he would not be punished for the offenses, and he was not concerned about their seriousness. The report further indicated that appellant had no previous record; that he was passive and cooperated during the investigation and had made a good adjustment during his detention at Waxter; that he was not a serious behavior problem either in school or at home. The report indicated that appellant was a "social isolate"; that his family situation was far from ideal; that he was a known truant who had been suspended for cutting classes.

At the hearing before the court on the State's exceptions to the Master's recommendation that juvenile jurisdiction not be waived, the appellant introduced the transcript of the hearing before the Master. The State then called one of the victims to testify. She related that a boy, whom she identified without objection as the appellant, came into the store, produced a gun, shot one person in the back, pressed his gun into the side of a customer and pulled the trigger; [1] and took money from the cash register. Appellant's mother again testified at the hearing with respect to his general good conduct.

In waiving juvenile jurisdiction, Judge Taylor said:

"* * * The act of armed robbery requires prior planning and preparation, however slight, and the forming of an intent to commit the act as

---

1. There was evidence showing that two of the shooting victims had been seriously injured and that one of them almost died.

distinguished from an act of spontaneity, which may be associated with a childish prank or a response of immaturity. The acts of which he is charged are acts in which grievous bodily harm was inflicted upon members of society without provocation.

"There was made a complete investigation into the background of this youth by the Department of Juvenile Services. The investigation revealed that the overall attitude of the youth is barely tolerable and he is overly confident he will receive no punishment as a result of the charges if proven. The investigation further revealed that the youth has been a truancy problem at school, and is from a broken home wherein he receives little, if any supervision from his mother with whom he resides.

"The Court has weighed the recommendations of the Department of Juvenile Services, but in view of this youngster's apparent total disregard for the safety and well-being of others as exhibited by his conduct leading to the present charges the Court will not adopt these recommendations.

"However, the legislature has vested in the Court the determination whether youths under eighteen years of age charged with certain offenses, some of which are armed robbery and assault with intent to murder, which if committed by an adult would be a crime, shall be tried under the usual criminal procedures. In reviewing the evidence in this case and inferences drawn therefrom and considering among other things the factors to be considered by the Court as set forth in Article 26, Section 70-16, the Court concludes that the acts of which the respondent is charged resulted from planning, surveillance, and the formulation of a scheme to perpetrate the armed robbery, and as so often

occurs, led to the discharging of the weapon to the injury of the complaining witnesses in these cases. In the circumstances the Court deems that the respondent's activities were not the indiscreet, unplanned, spontaneous acts of a juvenile but the totally formulated scheme of one bent upon taking the property of another without concern for the physical safety of the custodian of that property or others who witnessed the robbery."

I

*Kent v. United States, supra,* relied upon by appellant, involved a waiver of juvenile jurisdiction hearing under the Juvenile Court Act of the District of Columbia. That case dealt solely with, and was expressly limited to, the interpretation to be given to the statute. *Kemplen v. State,* 295 F. Supp. 8 (D. C. Md.) ; *Johnson v. State,* 3 Md. App. 105; *State v. Hance,* 2 Md. App. 162. The Supreme Court held in *Kent* that the waiver hearing was a critically important action determining vitally important statutory rights of the juvenile. It stated that the waiver hearing need not conform "with all of the requirements of a criminal trial or even of the usual administrative hearing," but that "the hearing must measure up to the essentials of due process and fair treatment." At 562. In the course of its opinion, the Supreme Court noted with approval the relevance of, and use by, juvenile courts of social and other records pertaining to the juvenile's history. The court said that access to such records should be given to the juvenile's counsel to afford him an opportunity to impeach or otherwise challenge them. It said that there was no irrebuttable presumption of accuracy attached to staff reports; but that such reports were subject "within reasonable limits having regard to the theory of the Juvenile Court Act, to examination, criticism, and refutation." At 563. The court concluded, by saying: "While the juvenile court judge may, of course, receive *ex parte* analyses and recommendations from his staff, he may not, for purposes

of a decision on waiver, receive and rely upon secret information, whether emanating from his staff or otherwise." At 563.

It is plain from *Kent* that the Supreme Court found no infirmity in using relevant social records of the juvenile as an aid by which to determine whether juvenile jurisdiction should be waived, so long as access to such records was afforded to counsel representing the juvenile.

*In Re Gault, supra,* also relied upon by appellant, though a constitutional decision, was limited in its application to the actual adjudication proceeding determining the question of juvenile delinquency. *Johnson v. State, supra; State v. Hance, supra.* That case decided "that, although the Fourteenth Amendment does not require that the hearing at this [adjudicatory] stage conform with all the requirements of a criminal trial or even of the usual administrative proceeding, the Due Process Clause does require application during the adjudicatory hearing of 'the essentials of due process and fair treatment.'" *In Re Winship,* 397 U. S. 358, 359.

In *Kemplen v. Maryland,* 428 F. 2d 169 (4th Cir.), the court said that whether *Gault* and *Kent* together form a constitutional imperative governing juvenile waiver proceedings was unclear; but that it was clear that a waiver hearing is much more than a mere preliminary hearing establishing probable cause for the initiation of further action against the juvenile. The court emphasized the great importance of the waiver hearing; it noted that such hearing "determines whether the accused, if found guilty, will receive non-punitive rehabilitation as a juvenile from the state's social service agencies or will be sentenced as an adult." At 174. It concluded that "juvenile jurisdiction is to be waived only where the offender is found, by an exercise of sound judicial discretion based upon a thorough investigation, to be an unfit subject for juvenile rehabilitative measures." At 175.

The Supreme Court decided in *Winship, supra,* "that the Due Process Clause protects the accused against con-

viction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." At 364. The court extended the "proof beyond a reasonable doubt" principle to the delinquency adjudication stage of juvenile court proceedings; it declined, however, to apply it to the pre-adjudicatory stages of the juvenile process, and specifically indicated that it would not affect the "wide-ranging review of the child's social history." At 366-367.

Considering the Supreme Court's holding that a waiver hearing need not conform to the requirements of a criminal trial, or even of the usual administrative hearing, in juxtaposition with its further holding that the procedure at such hearing must nevertheless measure up to the essentials of due process and fair treatment, we conclude that appellant was afforded such a hearing.[2] No constitutional rights of the juvenile appellant in this case were violated by consideration of the report of the Department of Juvenile Services, despite its hearsay character. The cases, the statute, and the Maryland Rules all contemplate that such reports will be utilized at juvenile waiver hearings so long as the juvenile's counsel is afforded reasonable access to the report, an opportunity to challenge or impeach its findings and conclusions, and the right to summon any person he may desire to testify at the waiver hearing.[3]

---

2. *See Neuman v. City of Baltimore*, 251 Md. 92, 97, holding that in administrative hearings the agency is not generally bound by the technical common law rules of evidence, but must observe the basic rules of fairness as to the parties appearing before them. The court noted that hearsay evidence is generally admissible and may even serve as the sole basis for decision if it is credible and has sufficient probative force.

3. *Compare Purks v. State*, 226 Md. 43 and *Pierson v. Director*, 235 Md. 654, holding that staff reports in defective delinquency cases may be admitted in evidence as an exception to the hearsay rule; *Scott v. State*, 238 Md. 265, and *Baker v. State*, 3 Md. App. 251, holding that in sentencing criminal offenders after conviction the court is not limited by strict rules of evidence and may receive reports concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background, and other matters helpful in determining the proper sentence; these cases specifically hold that the court may consider information obtained outside the courtroom and from persons who the de-

Granting the critical nature of the waiver hearing, we hold that nothing in the constitution, State or federal, requires the State to satisfy the court beyond a reasonable doubt that waiver is proper; the inquiry at the waiver hearing does not require a finding of guilt or innocence, or proof of the elements of any criminal offense. We think that in accordance with Section 70-18 and Maryland Rule 912 c waiver is justified where a preponderance of the legally sufficient evidence shows that such a determination is proper in light of the factors to be considered under Section 70-16. In this context, we concur with the Fourth Circuit's holding in *Kemplen v. Maryland, supra,* that juvenile jurisdiction is properly waived where, under Section 70-16, the juvenile is found, by an exercise of sound judicial discretion based upon legally sufficient evidence, to be an unfit subject for juvenile rehabilitative measures.

While the appellant did not have a copy of the Department's report prior to the hearing before the Master, the result of that hearing was favorable to him; he did have access to the report prior to the hearing before the court and because of its favorable recommendation, undoubtedly wanted the court to consider it. As to Detective Borruso's alleged hearsay testimony, it constituted at most a general narration of the nature of the offenses, as learned by him during the course of his investigation. Although it would undoubtedly have been preferable at the hearing before the Master to have had a first-hand account of what occurred through the testimony of eyewitnesses, we think that in the circumstances of this case appellant was not denied due process or fair treatment by reason of Borruso's testimony. That it may have been hearsay would not *per se* call for its exclusion from evidence or prohibit it from being considered in making the

fendant has not been permitted to confront or cross-examine; and *Knight v. State,* 7 Md. App. 313, holding that revocation of probation proceedings are informal in character and not subject to the limitations imposed upon criminal trials and that the facts do not have to come to the knowledge of the court in the manner required by the rules of evidence, hearsay evidence being admissible.

waiver determination. In view of the limited import of Borruso's testimony, and the reason for it, the fact that appellant did not then, and does not now, refute its accuracy, and for the further reason that it was later corroborated at the hearing before the court by the testimony of one of the victims, we think appellant was in no way harmed by it. Moreover, appellant himself introduced the transcript of the hearing containing Burruso's testimony and in effect asked that the court consider it. We conclude that no error was committed by receiving the Department's report and Borruso's testimony in evidence.

## II

Appellant claims that the court erred in its determination to order a waiver of juvenile jurisdiction; that the court had no legally sufficient proof before it of two of the factors which it was required to consider under Section 70-16, namely, his mental and physical condition, and his amenability to treatment in a juvenile facility or program; that the report of the Department of Juvenile Services was inadequate; and that the court improperly focused on only one part of the Department's report which was specially detrimental to him.

We have carefully considered these arguments and find no merit in any of them. We think Judge Taylor's opinion, heretofore set forth, indicates that he considered all the relevant factors under Section 70-16. That the court emphasized the factors relating to the "nature of the offense," and the "safety of the public," is, we think, wholly understandable in this case. Of course, not all of the relevant factors under Section 70-16 need be resolved against the juvenile to justify the waiver of jurisdiction. Nor is there any utility in requiring the court to make an arithmetic-type calculation as to the weight given by it to each factor. And, obviously, the court is not bound to accept the recommendations of the Master, or of the Department of Juvenile Services.

We think there was sufficient evidence before the court of all relevant factors to enable it to properly conclude,

by an exercise of sound judicial discretion, that appellant would be an unfit subject for juvenile rehabilitative measures. The report of the Department could have been far more thorough than it was; it could have included psychological and psychiatric testing results and a professional evaluation as to appellant's amenability to treatment in a juvenile facility or program. That it did not, does not compel the conclusion that there was no evidence before the court concerning appellant's physical and mental condition, or of his amenability to juvenile treatment. The Department's report contained data bearing on each of these factors; it reflected a course of conduct, a mental attitude and outlook on appellant's part from which it could be fairly concluded that in view of his age and the nature of the offenses he allegedly committed, he would not be a person who would benefit from specialized juvenile treatment. We thus hold that the court was not in error in ordering that juvenile jurisdiction be waived in this case.

### III

We find no merit in appellant's contention that it was improper for the court to hear the testimony of one of the victims when conducting a hearing on the exceptions of the State to the Master's recommendations. We think Maryland Rule 908 e 3, heretofore set forth, permits the court to hear such testimony if it chooses. Moreover, appellant made no objection to it and was himself permitted at the hearing to adduce additional testimony in his own behalf.

### IV

The offenses in this case occurred on October 27, 1969. The hearing before the court was held on February 20, 1970; the court's decision to waive juvenile jurisdiction was rendered on June 29, 1970. On appeal from that decision, the record was transmitted to us on October 29, 1970. No motion to advance the case on our docket was made by either party, as might have been done under Maryland Rule 1045 c. We heard the case in its regular

order on March 23, 1971. It goes without saying that it hardly serves the ends of justice to permit a case such as this to lie fallow for such a long time on the preliminary question whether juvenile jurisdiction should or should not be waived. Had a motion to advance been made, we would most certainly have granted it.

*Judgment affirmed.*
*Mandate to issue forthwith.*