# MATTER OF MARK DAVID BARKER

[No. 740, September Term, 1972.]

*Decided May 31, 1973.*

The cause was argued before CARTER, MENCHINE and SCANLAN, JJ.

*Howard I. Golden, Assistant Public Defender,* for appellant.

*Josef E. Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Howard B. Merker, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellant, Mark David Barker, a 13 year old child was charged in the Circuit Court of Baltimore City, Division For Juvenile Causes, with being a delinquent. The act of delinquency alleged of the appellant was the premeditated shooting to death of a 16 year old boy on a Baltimore street on October 9, 1972. Pursuant to the State's request, a waiver hearing was held before the Juvenile Court, Judge Robert I. H. Hammerman presiding, on November 22, 1972, following which the Juvenile Court waived jurisdiction over Mark to the Criminal Court of Baltimore.

The case is here on appeal from the lower court's decision waiving jurisdiction. The controlling question is whether the Juvenile Court's decision to waive jurisdiction on the ground that the appellant might require psychiatric treatment extending beyond his twenty-first birthday was supported by a fair preponderance of the evidence.[1]

---

1. In view of the disposition we make of this issue, we need not consider appellant's second contention that the trial court erred in refusing to adjudicate the appellant "a mentally handicapped" child, as provided in Article 26, Section 70-2 of the Maryland Code. We note, however, that appellant's request in this regard was not made until the very end of the waiver hearing on November 22, 1972, and, furthermore, that Section 70-16 states that the waiver hearing shall be held *"before* the adjudicatory hearing . . . ." (Emphasis added.)

For the reasons stated below, we find that the evidence was insufficient to sustain the Juvenile Court's waiver of jurisdiction on the ground it assigned, *i.e.*, that the safety of the public required it, since the successful medical treatment of the appellant might extend beyond the period of his majority. We, therefore, reverse the judgment below and remand the case for further proceedings in the Juvenile Court.

## I

### THE EVIDENCE WAS INSUFFICIENT TO SUPPORT WAIVER

Under the statute, Article 26, Section 70-16 (a) of the Maryland Code, juvenile court jurisdiction may be waived only over "(1) a child who has reached his fourteenth birthday or (2) a child who has not reached his fourteenth birthday who is charged with committing an act which, if committed by an adult, would be punishable by death or life imprisonment." Mark was 13 years 4 months of age at the time of the killing of which he is accused. Since the crime attributed to him would constitute first degree murder if committed by an adult, the appellant is subject to waiver of juvenile court jurisdiction. *In re Davis*, 17 Md. App. 98, 101, 299 A. 2d 856, 859 (1973).

It has been said that the fundamental idea behind waiver provisions in juvenile statutes, such as Article 26, Section 70-16, is that there are *some* youths who are not in a position to benefit from specialized treatment as youths. *Kemplen v. Maryland*, 428 F. 2d 169, 175, n. 14 (4th Cir. 1970). It is only *some* children, however, who may not benefit from retention in a Juvenile Court system; for *most*, the presumption is otherwise. As the Supreme Court of the United States has put the point: "[I]t is implicit in [the juvenile court] scheme that non-criminal treatment is to be the rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases."

*Kent v. United States,* 383 U. S. 541, 560 (1966), quoting with approval *Harling v. United States,* 295 F. 2d 161, 164-165 (D.C. Cir. 1961). Moreover, as the Fourth Circuit observed in *Kemplen v. Maryland, supra,* the "waiver proceeding can result in dire consequences indeed for the guilty accused," including incarceration for a period much longer than his majority and the loss of certain of his rights of citizenship, if the offense is a felony. *Id.* at 174. Thus, under the Maryland statute, "juvenile jurisdiction is to be waived only where the offender is found, by exercise of sound judicial discretion *based upon a thorough investigation,* to be an unfit subject for juvenile rehabilitative measures." *Id.* at 175 (emphasis added) ; *see also Haziel v. United States,* 404 F. 2d 1275 (D.C. Cir. 1968).

In considering whether *vel non* to waive jurisdiction over Mark, the Juvenile Court had before it a number of reports and recommendations of the Department of Juvenile Services, including the findings of a child psychiatrist, a consulting psychologist and a social worker. These experts were unanimous in concluding that Mark was a sick child who needed immediate and intensive psychiatric treatment in a hospital setting.

On November 3, 1972, the Department of Juvenile Services recommended that Mark receive:

> "Intensive individual psychotherapy in a psychiatric setting such as the adolescent unit of the State Hospital. Even though Mark is not psychotic at present, he has the potential to become quite ill if not treated immediately."

In his first report of November 22, 1972, Dr. Ulgur, a child psychiatrist, found that Mark was "in the process of developing a paranoid personality. He then recommended as follows:

> "Due to the fact that at the age of 13 he is still in the formative stage, at this time I strongly recommend an immediate psychiatric intervention. Individual psychotherapy in a

psychiatric setting followed by intensive individual psychotherapy on an outpatient basis and intensive counseling and guidance for the family are absolutely necessary. Of course, if he is not treated successfully in a residential setting, to return him to the open community will be very risky."

On November 3, 1972, Dr. Wislar, a psychologist, concluded his detailed report as follows:

"Mark is seen as being a very disturbed youngster who is presently both depressed and agitated. Although depression and agitation may be a function of present circumstance, the intensity of emotional turmoil seems to have been present for quite some time. Behaviorally, Mark seems to have been asking for help for more than a year. He seems to have recognized that something was wrong, yet, did not know what it was or where to seek assistance. Inner tension seems to have built to a point at which there were no appropriate channels for release. This boy needs intensive treatment to prevent further personality disintegration regardless of the disposition of his case."

Finally, Dr. Ulgur, the psychiatrist, filed a supplemental psychiatric evaluation of Mark, dated November 16, 1972, stating:

"I definitely consider this youngster as being emotionally disturbed and in need of immediate psychiatric intervention and probably long term psychiatric therapy in a controlled residential psychiatric setting, by which I definitely mean a hospital setting such as the adolescent unit of Sheppard Pratt Hospital, any psychiatric unit attached to a general hospital; adolescent units of State hospitals probably will be much more logical for him because he could be controlled

more effectively and treated less expensively for a longer period of time."

Before waiving jurisdiction over the appellant, the Juvenile Court Judge reviewed and referred to the reports before him at some length. He indicated his agreement with the basic recommendations of those reports, stating specifically that "this young man needs . . . extensive medical treatment in a residential setting . . . ." Nevertheless, at the close of the waiver hearing, the Juvenile Court Judge waived jurisdiction. Essentially, his reasoning was that the appellant needed "long term" psychiatric treatment, but since it could not be determined how long a period of time effective treatment might consume the Juvenile Court could lose jurisdiction over him when he reached twenty-one, thus requiring his release to the community without having been completely cured. Judge Hammerman put it:

> "I think that the very substantial inadequacy of the juvenile court in this area of treatment is that we are limited to seven and a half years of treatment which may but may not be sufficient because, under the law, as soon as this boy achieves the age of twenty-one years all supervision of this respondent ceases and he is then beyond the jurisdiction of the court, and I am far from convinced that at this point he will have received the fullness of treatment and the full effectiveness of treatment that may be necessary in his case."

The Juvenile Court then went on to say:

> *"I think if we are to accept these reports that the answer lies in hospitalization,* but I think there is more security for him and for the public if that hospitalization can be open-ended and not have an automatic terminal date.
>
> * * *
>
> "[B]*ut I think that this is a long term propo-*

*sition from reading the medical reports and I
don't know just how long term it is.* It could be
three years. It could be five years. It could be
ten years, may be longer . . . ." (Emphasis
added.)

Article 26, Section 70-16 (b) provides that in determining whether to waive jurisdiction, the Juvenile Court shall consider the following factors:

"(1) Age of child.
(2) Mental and physical condition of child.
(3) The child's amenability to treatment in any institution, facility, or programs available to delinquents.
(4) The nature of the offense.
(5) The safety of the public."

We have held that it is not necessary that all of the five factors enumerated in the statute need be resolved against the juvenile in order to justify a waiver of jurisdiction. *In re Waters,* 13 Md. App. 95, 97, 281 A. 2d 560 (1971). Nor, as we have said, is the Juvenile Court required to make an arithmetic-type calculation as to the weight it assigns to each factor. *Hazell v. State,* 12 Md. App. 144, 277 A. 2d 639 (1971). And it is established that waiver will be upheld "where a preponderance of the legally sufficient evidence shows that such a determination is proper in light of the factors to be considered under Section 70-16." *Id.* at 154.

In the instant case, the lower court, although taking into relevant account Mark's age and his mentally sick condition, nevertheless, concluded that jurisdiction must be waived solely because successful treatment of the appellant's mental condition would be a "long term proposition" which *might* extend beyond his majority, in which case the safety of the public might not be protected since, by virtue of Article 26, Section 70-20 (a), juvenile court jurisdiction would expire when Mark reached his twenty-first birthday, at which time he would have to be released from confinement.

Our examination of the record reveals that the evidence is insufficient to support the Juvenile Court's surmise that the effective psychiatric treatment which Mark so urgently needs necessarily, or even probably, will extend beyond his twenty-first birthday. Neither the psychiatrist nor the psychologist stated the probable duration of the medical treatment which they prescribed for Mark. The only general estimate of time is the statement in Dr. Ulgar's supplemental report that Mark "is in need of immediate psychiatric intervention and 'probably long term' psychotherapy in a controlled residential psychiatric setting . . . ."

At the present time, as the trial court acknowledged, there are facilities available to the Juvenile Court in which Mark could receive the psychiatric and related treatment which both the lower court and the doctors agree he needs. These include facilities designated by the State Department of Juvenile Services of the Department of Health and Mental Hygiene. Article 26, Section 70-19 (a) of the Maryland Code. Indisputably, there are currently available to the Juvenile Court facilities in which the appellant could be confined while receiving intensive psychiatric treatment in a hospital setting, as recommended by the psychiatrist and psychologist who examined him. Indeed, the court below, even when waiving jurisdiction to the adult criminal court expressed his strong preference that Mark be treated as a juvenile and not as an adult, saying:

"I do not want to see this young man processed in the adult criminal system in the usual manner that adults—in fact, if he is going to be detained in lieu of bail, I don't want to see him and will not allow him to be detained at a jail facility. Rather I think he should be detained in lieu of bail, pending trial in the Criminal Court, at a juvenile-type facility. I do not think that the answer is, if he is found guilty, to commit him to any type of adult penal institution."

This case painfully illustrates the difficult decision a juvenile court so often must make when it is asked to waive jurisdiction of a child of tender years to the adult criminal court. Waiver is rarely a matter of easy choices. In *State v. Gibbs,* 94 Idaho 908, 500 P. 2d 209, 217 (1972), the Idaho Supreme Court, after reviewing a number of articles and comments concerning the factors that are taken into account in waiver proceedings among juvenile court judges throughout the Country, concluded that juvenile court jurisdiction ordinarily is waived when:

> "(1) the defendant has acquired such a degree of emotional or mental maturity that he is not receptive of rehabilitative programs designed for children; (2) although the defendant is immature, his disturbance has eluded exhaustive prior efforts at correction through existing juvenile programs; or (3) the defendant is immature and might be treated, but the nature of his difficulty is likely to render him dangerous to the public, if released at age twenty-one, or to disrupt the rehabilitation of other children in the program prior to his release." [2]

In the case at bar, the Juvenile Court's assigned reason for waiving jurisdiction over appellant falls within the third category set out in *State v. Gibbs, supra, i.e.,* "the nature of his difficulty is likely to render him dangerous to the public" if he must be released from the Juvenile Court system when he reaches twenty-one. Nevertheless, in our view, the evidence in this record does not go beyond a bare showing of the possibility that effective treatment of the appellant might require his detention beyond his majority. That mere possibility is not enough to justify waiver on the facts of this case.

---

2. In State v. Gibbs, *supra,* the Supreme Court of Idaho pointed out that the general criteria quoted above "embody the major provisions of the ambitious new court rules and statutes establishing controlling [waiver] criteria in Michigan, *Maryland* and Texas," citing Article 26, Section 70-16, *supra. Id.* n. 36 (emphasis added).

Close in point on its facts and in its rationale is *H. v. Superior Court of Los Angeles*, 91 Cal. Rptr. 600, 478 P. 2d 32, 36 (1970). There, two doctors and a probation officer agreed that the juvenile would require treatment for an extended period. Dr. Marco refused to estimate the time required but did say that it should be evaluated from year to year. Both doctors thought the juvenile would improve if treated in juvenile facilities. The court said that it was not necessary to have opinion evidence that at the age of twenty-one appellant would positively be a physical danger to society. However, the court held that: *"If the possibility that the Youth Authority might have to treat a ward of the juvenile court beyond the age of his majority is the determinative factor in the court's decision that the minor is unfit, there must be substantial evidence in the record that successful treatment might require the extra time." Id.* (emphasis added).

Similarly, in the case at bar, if the appellant is to be waived to the adult criminal system, a fair preponderance of the evidence must show that it is reasonably *probable,* not just *possible,* that the appellant will require treatment extending beyond his twenty-first birthday and that the safety of the public thus requires that the Juvenile Court waive jurisdiction. On this record, no such demonstration has been made. We, therefore, reverse the judgment below and remand the case for further proceedings in the Juvenile Court.

## II

## DISPOSITION ON REMAND

This case now goes back to a Juvenile Court Judge who reluctantly waived jurisdiction to the adult criminal court in the first place. On its return he, of course, retains the broad dispositional discretion vested in him by the statute and which this Court has recognized in several decisions. *Hazell v. State* and *In re Waters, supra.* Accordingly, despite our belief, shared by the lower

court, that we are dealing with a mentally sick thirteen year old child, we are not inclined to mandate or direct that the appellant must be retained within the jurisdiction of the Juvenile Court. Thus, if another waiver hearing should produce medical evidence demonstrating that effective treatment of Mark's mental condition is likely to extend beyond his majority and the safety of the public, therefore, requires his retention beyond that period, it would be difficult to fault a waiver of jurisdiction by the Juvenile Court. Nevertheless, there are other dispositional alternatives which merit examination, if not pursuit. The Juvenile Court may wish to consider these alternatives since, in our view, they may offer a more humane, and perhaps sounder, understanding of what the law requires, or at least permits, in a tragic case of this kind. After all, if possible to do so without disregarding law and ignoring facts, the Juvenile Causes Act "shall be liberally construed to effectuate its purposes," *i.e.*, to preserve children from the taint of criminality and the consequences of criminal behavior. *In re Davis, supra* at 858.

We observe, first, that on return of the case for further proceedings "Counsel for the [appellant] . . . presumably can . . . suggest to the Court alternative schemes for rehabilitative disposition." *Kemplen v. Maryland, supra* at 175. He "should search for a plan, or perhaps a range of plans, which may persuade the court that the welfare of the child and the safety of the community can be served without waiver." *Haziel v. United States, supra* at 1279.

Secondly, emphasis should be laid on the cardinal fact, not disputed by the court below or by the State, that the appellant is a sick child in need of "immediate" and "intensive" psychiatric treatment. Although we do not go so far as to agree with everything which the Court said, or even with the result reached, in *Kent v. United States*, 401 F. 2d 408 (D.C. Cir. 1968), there is wisdom in Chief Judge Bazelon's statement in that case that: "Treatment of a sick juvenile is not a concern of an

adult criminal proceeding." *Id.* at 411. In *Kent,* a three-judge panel (Judge Burger *dissenting*) held that the social philosophy which underlies the District of Columbia Juvenile Court Act prohibited waiver by the Juvenile Court of a juvenile afflicted with a serious mental illness, since such waiver was not necessary for the protection of society and was not conducive to the juvenile's rehabilitation. In *Kent,* the Court further stated that:

> "It seems clear that the chief reason for waiver was that the juvenile court could retain jurisdiction over Kent for only five years and that he was unlikely to recover within this period. The paradoxical result is that the sicker a juvenile is, the less care he receives from the juvenile court. Since it may not be possible to guarantee that a very sick adolescent will recover by the time he is twenty-one, he will invariably be subjected to all the strains and stresses of a criminal prosecution, with only the hope that the Government will not succeed in its effort and that he may ultimately receive treatment pursuant to D.C. Code § 24-301 (d)." *Id.* at 412.

The Court overturned the Juvenile Court's waiver of jurisdiction over Kent and directed that civil commitment proceedings be instituted against him in order to insure that he remained in the hospital where he was already confined, stating that such "proceedings will assure his confinement for treatment for as long as the public safety requires." *Id.*

While our Juvenile Causes Act differs in some respects from the District of Columbia Juvenile Court Act applied in *Kent,* the two statutes are not far apart in their basic spirit and fundamental purposes. Therefore, we suggest that, on remand of the case, counsel for the appellant, with the approval of the Juvenile Court, might consider the institution of involuntary commitment pro-

ceedings against the appellant under Article 59, Section 12 of the Maryland Code.[3] That section provides for the involuntary admission to a facility licensed by or under the jurisdiction of the Department of Health and Mental Hygiene, of "any person" who has a mental disorder and needs in-patient medical care and treatment for the protection of himself and others. A person involuntarily admitted to a facility of the Department of Health and Mental Hygiene may not be judicially released except following a hearing at which it is determined that he does not have a mental disorder which requires medical care or treatment for his protection or for the protection of others. Article 59, Section 15 (d).

We are of the opinion that the "safety of the public" as referred to in Article 26, Section 70-16 (b) (5), would be adequately protected in this case and, at the same time, the interests of the child-appellant best assured by his being involuntarily committed to a proper facility under the jurisdiction of the Department of Health and Mental Hygiene pursuant to Article 59, Section 12. "If commitment ensues, he will be confined and treated until he is no longer dangerous due to mental illness." *Kent v. United States, supra* at 412.

If it should turn out that the appellant is not committable under Article 59, Section 12, "the juvenile court will be free to follow its usual procedure." *Kent, supra* at 412. In that case, the waiver hearing can proceed and, if the evidence justifies it, Juvenile Court jurisdiction over the appellant can be waived to the Criminal Court of Baltimore. On the other hand, if the evidence is insufficient to justify waiver, the Juvenile Court then can hold an adjudicatory hearing for the purpose of determining either that Mark is a delinquent child or a mentally handicapped child, as defined in Article 26, Sec-

---

3. At the first hearing, counsel for the appellant raised the possibility of Mark's voluntary commitment under Article 59, Section 11 (g) of the Code. The Juvenile Court was quite right in rejecting that suggestion since, if admitted voluntarily with his parents' consent, appellant's admission status would have to be renewed every year upon a new request executed by his parents.

tion 70-1(1)(3). In the present posture of this case the undisputed medical evidence in the record strongly suggests that Mark is "mentally defective or mentally ill," as those terms are used in the statutory definition of a "mentally handicapped child."

## CONCLUSION

Since the evidence is insufficient to support the basis on which the Juvenile Court waived jurisdiction of the appellant to the Criminal Court of Baltimore, its judgment in this respect is reversed and the case remanded for further proceedings in the Juvenile Court. While nothing we have said in this opinion is intended to circumscribe the dispositional discretion which the Juvenile Court Judge possesses when the case returns to him on remand, the alternative solutions of appellant's sad situation which we have suggested in our judgment warrant serious consideration on the part of the court below, the appellant, his parents, his counsel and the State. We offer them in an effort to avoid, if reasonably possible, the harsh result which inheres in subjecting a child of tender years to the processes, procedures, punishments and stigma of the adult criminal court system. Such a result may be justified when there is no other way to protect society. On the facts of this case, however, we do not believe that such a Hobson's choice is unavoidable.

*Order of waiver reversed; case remanded to the Circuit Court of Baltimore City, Division of Juvenile Causes, for further proceedings not inconsistent with this opinion. Mandate to issue forthwith.*