James J. **STOKES**

v.

Nicholas **GENAKOS.**

No. CA 76–171–T.

United States District Court,
D. Massachusetts.

Nov. 16, 1977.

---

Bingham, Dana & Gould, James F. McHugh, Boston, Mass., for plaintiff.

Barbara A. H. Smith, Asst. Atty. Gen., Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254 to release him from state custody. He alleges that he was deprived of his liberty without due process of law, as a result of the proceedings by which he was bound over for trial in the Superior Court from the Juvenile Court where he was initially charged. The court grants his petition, because of the failure of the juvenile court judge to make a detailed statement of the reasons for dismissing the juvenile proceedings against petitioner and binding him over for trial in the Superior Court.

### I

The background facts have been stipulated by the parties. On January 18, 1969, the body of a night watchman, Armand Cerbone, was discovered by Boston police. Five months later, juvenile delinquency complaints were issued against the petitioner by reason of alleged breaking and entering and murder. Two other young men were charged with murder and breaking and entering, in adult complaints, arising out of the same incident. Petitioner was 16 years old at the time.

On June 25, 1969, petitioner appeared before the Municipal Court for Dorchester where he was committed, without bail, to the Charles Street Jail to await hearing. On July 8, 1969, petitioner appeared before the Municipal Court for a hearing on the juvenile delinquency complaints. These complaints were dismissed. Identical criminal complaints were issued. A probable cause hearing on the criminal complaints was held.

Petitioner was subsequently tried and convicted of murder in the first degree by the Superior Court and sentenced to life imprisonment. On appeal, his conviction was reduced to second degree murder.

Petitioner brought a petition for habeas corpus in this court in 1972, which was dismissed for failure to exhaust his state remedies.[1]

In a subsequent petition for a writ of error before the full bench of the Supreme Judicial Court, all the issues now presented here were presented to the court and rejected. *Stokes v. Comm.*, 1975 Mass.Adv.Sh. 3030, 336 N.E.2d 735.

---

1. *Stokes v. O'Shea*, No. 72–16–M (D.Mass., filed Dec. 30, 1972).

## II

■ Of petitioner's four arguments,[2] only one requires lengthy discussion. Petitioner argues that he was deprived of his liberty without due process of law because the municipal judge dismissed the juvenile complaints against him, and thus waived the jurisdiction of the juvenile court over him, without giving a statement of his reasons for doing so.[3] The only comment made by the judge at the conclusion of the initial hearing was: "This young man is to be held." On the back of the two juvenile complaints, the judge wrote: "July 8, 1969 That the interest of the public requires that he shall be tried for the said offence," followed by the signature, "Jerome P. Troy, Justice." This was the only statement of reasons given by the judge for his decision to dismiss the juvenile complaints. It repeats verbatim the language of the governing statute, Mass.Gen.Laws, ch. 119, § 61.

The seminal case in this area is *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), in which the Supreme Court established procedural requirements for waiver hearings under the District of Columbia statute. In the course of its discussion, the Court pointed out that "the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." 383 U.S. at 556, 86 S.Ct. at 1055. The Court held, *inter alia*, that the juvenile judge must provide the juvenile with a statement of reasons for the waiver decision. After noting that the decision to waiver juvenile jurisdiction and transfer the youth to the adult session is reviewable by a motion to dismiss the indictment, the Court stated:

**2.** Petitioner argues first that he was put twice in jeopardy by being subjected to trial in the Superior Court following a hearing in the juvenile court. This argument must be rejected on the basis of the First Circuit's decision in *Jackson v. Justices of the Superior Court*, 549 F.2d 215 (1st Cir. 1977), cert. den., 430 U.S. 975, 97 S.Ct. 1667, 52 L.Ed.2d 370 (1977), holding that *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) is not to be applied retroactively.

Secondly, petitioner argues that he was deprived of due process by the juvenile judge's dismissal of juvenile charges against him under authority of Mass.Gen.Laws ch. 119, § 61, because the statute is impermissibly vague. Section 61 permits a juvenile judge to dismiss a juvenile complaint, and thus waive juvenile court jurisdiction, when "the interests of the public" require that the juvenile be tried as an adult. Vagueness arguments ordinarily arise in two contexts: where a criminal statute fails to give warning of the forbidden conduct, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), *Giaccio v. Pennsylvania*, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966); or where a statute vests excessive discretion in an administrative body, *Louisiana · v. United States*, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965). Petitioner has cited neither authority nor sound policy for the invalidation of a statute for vagueness in a context such as this.

Petitioner's third argument is that he has been denied equal protection of the laws because Mass.Gen.Laws ch. 119, § 61 does not require that the state show a compelling state interest for dismissing the juvenile complaint. This argument would require the court to find, without any authority for so doing, that petitioner has a fundamental right to be treated as a juvenile, or at least a fundamental right not to be incarcerated. The court declines to do so.

**3.** Mass.Gen.Laws ch. 119, § 74 states, in relevant part:

[N]o criminal proceeding shall be begun against any person who prior to his seventeenth birthday commits an offense against the law of the commonwealth or who violates any city ordinance or town by-law, unless proceedings against him as a delinquent child have been begun and dismissed as required by section sixty-one or seventy-two A

. . ..

Mass.Gen.Laws ch. 119, § 61 provided, at the time of the initial proceedings against petitioner:

If it be alleged in a complaint made under sections fifty-two to sixty-three, inclusive, that a child has committed an offense against a law of the commonwealth, or has violated a city ordinance or town by-law, and if such alleged offense or violation was committed while the child was between his fourteenth and seventeenth birthday, and if the court is of the opinion that the interests of the public require that he should be tried for said offense or violation, instead of being dealt with as a delinquent child, the court may, after a hearing on said complaint, order it dismissed.

Prior to 1975, dismissal of a juvenile complaint under § 61 brought into play § 75, which required the immediate issuance of a criminal complaint. Consequently, dismissal of juvenile charges under § 61 amounted to a waiver of the jurisdiction of the juvenile court over the accused.

Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not "assume" that there are adequate reasons, nor may it merely assume that "full investigation" has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of "full investigation" has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

383 U.S. at 561, 86 S.Ct. at 1057.

In reaching its conclusions about the procedural requirements for transfer hearings, the Court relied in part on the language of the District of Columbia statute, and in part on constitutional principles,[4] thus leaving ambiguous whether all of the procedures that they outlined for transfer hearings would be constitutionally required, absent the statute in question.

Subsequently, in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court held that certain procedures are constitutionally required before a juvenile may be adjudicated a delinquent. While so holding, the Court also suggested that its earlier decision was constitutionally based:

Although our decision [in *Kent*] turned upon the language of the statute, we emphasized the necessity that "the basic requirements of due process and fairness" be satisfied in such proceedings.

. . . With respect to the waiver by the Juvenile Court to the adult court of jurisdiction over an offense committed by a youth, we said that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." We announced with respect to such waiver proceedings that while "We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." We reiterate this view . . . as a requirement which is part of the Due Process Clause of the Fourteenth Amendment of our Constitution.

387 U.S. 12, 30–31, 87 S.Ct. at 1445 (footnote omitted).

Several courts have held that *Kent,* examined in the light of *Gault,* must be found to set out constitutionally required procedures for bind-over hearings.[5] Comments in subsequent Supreme Court decisions have also given support to this view.[6] Oth-

---

**4.** On the one hand, the Court stated:

The Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia Circuit provide an adequate basis for decision of this case, and we go no further.

383 U.S. at 556, 86 S.Ct. at 1055. On the other hand, it stated:

We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel.

383 U.S. at 557, 86 S.Ct. at 1055.

**5.** *Powell v. Hocker,* 453 F.2d 652 (9th Cir. 1971), *rev'd in part, Harris v. Procunier,* 498

F.2d 576 (9th Cir.), *cert. den.,* 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974); *U. S. ex rel. Turner v. Rundle,* 438 F.2d 839 (3d Cir. 1971); *Brown v. Wainwright,* 537 F.2d 154 (5th Cir. 1976) (implicit holding at 155, n. 1).

**6.** *In re Whittington,* 391 U.S. 341, 88 S.Ct. 1507, 20 L.Ed.2d 625 (1968), was an appeal from a finding of delinquency. After the appeal was filed, the petitioner was bound over for trial as an adult. The Court remanded the petition in light of *Gault,* suggesting that the "Ohio court may, of course, also consider the impact, if any, on the questions raised by petitioner of the intervening order of the Juvenile Court requiring him to face trial in the adult

er courts have refused to find that the procedures set forth in *Kent* were constitutionally required, finding instead that the decision was based primarily on the District of Columbia statute.[7] This court finds most persuasive the intermediate approach taken by the Fourth Circuit:

> Whether *Gault* and *Kent,* taken together, form a constitutional imperative as to juvenile waiver proceedings is not self-evident. However, *Kent* and *Gault* do make it unquestionably clear that juvenile court proceedings that affect a young person's substantial rights "must measure up to the essentials of due process and fair treatment," *Gault,* 387 U.S. at 30, 87 S.Ct. 1445, in the same manner as must criminal proceedings affecting the substantial rights of adults.

*Kemplen v. State of Maryland,* 428 F.2d 169, 173 (4th Cir. 1970) (footnotes omitted). Accordingly, we turn now to the question of whether the provision of a statement of reasons for the transfer decision is part of the "essentials of due process and fair treatment." In evaluating whether a statement of reasons is a fundamental element of due process, we must consider "the need for [it] . . . in the light of the function such a statement would perform."[8]

We look first at the nature of the interest at stake. Under the Massachusetts statutory scheme, as in that of the District of Columbia, "the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." *A Juvenile v. Comm.,* 1976 Mass. Adv.Sh. 1237, 347 N.E.2d 677, 684; *Kent v. United States, supra.* The original and exclusive jurisdiction of the Juvenile Court over the child gives him special rights and immunities. The proceedings against him are shielded from publicity. Although he may be incarcerated, he may not be sentenced to a jail or house of correction and, as of the time petitioner was sentenced, he could be held only until his twenty-first birthday. The juvenile court is mandated to treat the children before it not as criminals but as children in need of aid, encouragement and guidance. Adjudication as a delinquent is not accompanied by the adverse collateral consequences of a conviction, such as subsequent disqualification for public employment, and evidence of the adjudication may not be introduced at any subsequent court proceeding against the child. Mass.Gen.Laws ch. 119, §§ 53, 58, 60, 60A, 65 and 83. Hence, the transfer decision is of great importance.[9] For petition-

---

courts." 391 U.S. at 344, 88 S.Ct. at 1508. Many district courts have interpreted this as an indication that the Supreme Court considered its decision in *Gault* as relevant to the application of principles of due process to transfer hearings, considered in *Kent.*

In *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), holding that the California bind-over procedure constituted double jeopardy, the Court said:

> Although the juvenile-court system had its genesis in the desire to provide a distinctive procedure and setting to deal with the problems of youth, including those manifested by antisocial conduct, our decisions in recent years have recognized that there is a gap between the originally benign conception of the system and its realities. With the exception of *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), . . . the Court's response to that perception has been to make applicable in juvenile proceedings constitutional guarantees associated with traditional criminal prosecutions. 421 U.S. at 528–9, 95 S.Ct. at 1785. This would seem to suggest that Kent was a constitutional holding.

**7.** *Bombacino v. Bensinger,* 498 F.2d 875 (7th Cir.), *cert. den.,* 419 U.S. 1019, 95 S.Ct. 492, 42 L.Ed.2d 292 (1974); *Comm. v. Martin,* 355 Mass. 296, 244 N.E.2d 303 (1969), *accord, Comm. v. Roberts,* 362 Mass. 357, 285 N.E.2d 919 (1972); *Comm. v. Stokes,* 1975 Mass. Adv.Sh. 3030, 336 N.E.2d 735.

**8.** *Bombacino v. Bensinger,* 498 F.2d 875, 878 (7th Cir.), *cert. den.,* 419 U.S. 1019, 95 S.Ct. 492, 42 L.Ed.2d 292 (1974). *See also* the concurring opinion of Justice Brennan in *McKeiver v. Pennsylvania,* 403 U.S. 528, 554, 91 S.Ct. 1976, 1991, 29 L.Ed.2d 647 (1971), arguing that due process decisions can be made

> only in terms of the adequacy of a particular state procedure to 'protect the [juvenile] from oppression by the Government,' . . . and to protect him against 'the compliant, biased or eccentric judge.'

**9.** In addition, the waiver hearing is the only opportunity that the juvenile has to advance the "defense" that he is a juvenile, which is akin to a plea of diminished responsibility. *Harris v. Procunier,* 498 F.2d 576 (9th Cir.) (Hufstedler, J., dissenting), *cert. den.,* 419 U.S.

er, it meant the difference between facing the life sentence he is now serving and the possibility of at most five years of treatment in a juvenile facility.

Under the Massachusetts scheme, the waiver decision may be appealed by means of a motion to dismiss for lack of jurisdiction in the Superior Court, or by a petition for relief in the nature of certiorari in the Supreme Judicial Court. *See A Juvenile v. Comm., supra,* 347 N.E.2d at 679; *Comm. v. A Juvenile,* 363 Mass. 640, 296 N.E.2d 194, 195 (1973). Appeal without a statement of reasons cannot result in meaningful review. *Kent v. United States, supra,* 383 U.S. at 561, 86 S.Ct. 1045.[10] The availability of review makes the provision of reasons a necessary element of due process.

The purpose such a statement of reasons would serve is clear. For example, in the case at bar, the juvenile court might have acted as it did on the basis of a determination that the "public interest" test was satisfied whenever a juvenile was charged with murder. If that conclusion had been articulated, petitioner would have had a basis for challenging the waiver decision, because the Massachusetts legislature has

determined that an accusation of murder, without more, does not require that a child be tried as an adult.[11] There are also instances in other jurisdictions where waivers of juvenile jurisdiction have been overturned on appeal because the reviewing court found that the reasons as stated by the juvenile court were inadequate to support the waiver decision.[12]

Statements of reasons have been held to be constitutionally required in proceedings before a wide variety of administrative bodies where often the rights at stake are of less magnitude than in the case at bar.[13] Respondent would seek to distinguish those proceedings on the grounds that such requirements are necessary for administrative bodies but not for judges, who are given wide discretion in the performance of such functions as sentencing. *See e. g., Williams v. New York,* 337 U.S. 241, 245–51, 69 S.Ct. 1079, 93 L.Ed.2d 1337 (1949).[14] The sentencing function is not, however, the closest analogy to the juvenile judge's function in the transfer hearing, as he is not deciding what kind of sentence to give, but rather under which scheme the actions of the ac-

970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974); *Kemplen v. State of Maryland,* 428 F.2d 169, 175 (4th Cir. 1970).

10. *See also In re Gault, supra,* where the Court observed in dicta:

As the present case illustrates, the consequences of failure to . . . state the grounds for the juvenile court's conclusion may be to throw a burden upon the machinery for habeas corpus, to saddle the reviewing process with the burden of attempting to reconstruct a record, and to impose upon the Juvenile Judge the unseemly duty of testifying under cross-examination as to the events that transpired in the hearings before him. 387 U.S. at 58, 87 S.Ct. at 1460.

11. By a statute enacted in 1948, Mass.Stat. 1948, ch. 310, §§ 3, 12, the Legislature exempted all juveniles accused of murder from the statutory requirements of Mass.Gen.Laws, ch. 119, § 74, that no criminal proceedings be commenced against a juvenile until juvenile proceedings had been begun and dismissed in accordance with § 61. In 1960, the murder exception was expressly removed by the Legislature. Mass.Stat. 1960, ch. 353, § 3. *See generally A Juvenile v. Commonwealth, supra,* 347 N.E.2d at 685.

12. *See, e. g., In re Stevenson,* 538 P.2d 5 (Mont. 1975); *In re Barker,* 17 Md.App. 714, 305 A.2d 211 (1973). *Compare Bombacino v. Bensinger, supra,* in which the Seventh Circuit upheld a waiver without a statement of reasons where there was no right of appeal.

13. Statements of reasons are necessary in parole hearings, *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); prison disciplinary hearings, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); probation revocation proceedings, *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); welfare hearings, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); prior to deprivation of a driver's license, *Raper v. Lucey,* 488 F.2d 748 (1st Cir. 1973); the firing of non-tenured college and public school teachers, *McEnteggart v. Cataldo,* 451 F.2d 1109 (1st Cir. 1971), *cert. den.,* 408 U.S. 943, 92 S.Ct. 2878, 33 L.Ed.2d 767 (1972); *Drown v. Portsmouth School District,* 435 F.2d 1182 (1st Cir. 1970), *cert. den.,* 402 U.S. 972, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971).

14. *See also Bombacino v. Bensinger, supra.*

cused will be judged. That function is more analogous to the one at issue in *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). There, the Court considered the circumstances under which a person convicted of a crime under Colorado law could be sentenced to an indeterminate term of one day to life under the Sexual Offenders Statute. Invocation of the statute required a finding that the person, "if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." The Court held that the statute could not be applied without procedural protections, including the provision of findings "adequate to make meaningful any appeal that is allowed," 386 U.S. at 610, 87 S.Ct. at 1212, because the decision to proceed under the statute required a new factual determination. Here, also, the need for a prior factual determination requires that the judge state his reasons for his actions.

▆ Accordingly, the combined impact of the issues to be considered at the waiver hearing, the availability of review, and the necessity that the judge make an independent factual determination, lead to the conclusion that a failure to provide a statement of reasons at the conclusion of the waiver hearing deprived the petitioner of an essential element of fair treatment. His habeas corpus petition is granted.

### III

The question of relief remains. The juvenile court may no longer exercise jurisdiction over petitioner, as he has passed the age of 18. Mass.Gen.Laws ch. 119, § 72. In accordance with the procedure suggested by the Supreme Court in *Kent v. United States, supra*, 383 U.S. at 564–65, 86 S.Ct. 1045, the writ shall issue unless, within 30 days, the Commonwealth begins proceedings to give petitioner a hearing de novo in the Superior Court on the waiver of juvenile jurisdiction over him.

An order will issue.