Theodore A. Kelly, J.
Petitioner moves herein by way of writ of habeas corpus for release from respondent’s custody on the ground that he was denied due process at his parole revocation hearing. Petitioner further asserts that subdivision 5 of section 803 of the Correction Law, to the extent that it denies a returned parole or conditional release violator good time credit on the remaining portion of his maximum term if such portion does not exceed one year, is unconstitutional.
Petitioner was sentenced to an indeterminate term not to *499 exceed three years on October 26, 1973 following conviction for robbery in the third degree. Petitioner was paroled on November 25, 1974.
On October 30 a parole warrant was issued for petitioner’s arrest. Petitioner was charged with the following violations of his parole:
(1.) That on October 30, 1975 he possessed methadone which had been illegally obtained.
(2.) That on October 30, 1975 he possessed three hypodermic instruments.
(3.) That since his release on parole he had amassed a large number of parking violations which he did not pay.
(4.) That during the end of July he was admittedly in the company of one Atlee Jones.
(5.) That since his release on parole, he had used methadone and marijuana.
(6.) That since his release he had stayed away from his approved residence without the knowledge or consent of his parole officer.
(7.) That on October 30, 1975 he possessed 40 rounds of ammunition for a .35 caliber rifle.
Petitioner was given a parole revocation hearing with counsel on January 15, 1976, at which time charges (2) and (5) were dismissed. At the conclusion of the hearing petitioner’s parole was revoked and he was held to his maximum expiration date. Petitioner contends that the action of the parole board was illegal since he was not afforded an opportunity to confront and cross-examine adverse informants although his attorney had requested their production at the hearing. He further contends that the determination of the parole board was based upon hearsay testimony; that his motion to suppress the ammunition referred in charge No. (7) should have been granted; that he was not furnished with meaningful reasons for the revocation of his parole and a statement of the evidence relied upon; that he was not furnished with an explanation of why punishment other than reincarceration was not imposed; and that he has not been allowed good time credit on the remainder of his sentence.
The Attorney-General opposes the application as without merit.
A parole revocation hearing is in the nature of an administrative proceeding (People ex rel. Menechino v Warden, 27 *500 NY2d 376, 382) for the purpose of determining whether a parolee has violated the conditions of his parole (People ex rel. Maggio v Casscles, 28 NY2d 415, 418). It has been long recognized that actions taken by the parole board, whether to grant or to revoke parole, are deemed to be judicial functions and shall not be reviewable if done in accordance with law (People ex rel. Menechino v Warden, supra; Correction Law, § 212, subd 10; Matter of Hines v State Board of Parole, 293 NY 254). As long as the parole board does not run afoul of statutory mandates or violate procedural due process, its determination should remain free from judicial review (Matter of Paulsen v New York State Bd. of Parole, 46 AD2d 661).
In People ex rel. Warren v Mancusi (40 AD2d 279) the court held that the parole board has the burden of going forward with proof in the face of a denial of charges, and where no evidence is presented by the board which would satisfy it that a parole violation has occurred, a revocation of parole is unwarranted. The inability of a parolee to confront and to cross-examine adverse witnesses constitutes a lack of due process (People ex rel. Sammarco v Le Fevra, 78 Misc 2d 882; People ex rel. Warren v Mancusi, supra).
At the parole revocation hearing, respondents produced Parole Officer Walter McGuire. McGuire testified that petitioner had made his regular office visit on October 30, 1975 and that he observed a puncture mark on petitioner’s left arm; that he then searched an attaché case that petitioner was carrying and discovered a plastic bottle containing fluid residue; that a search of petitioner’s car disclosed five more plastic bottles, one of which contained a fluid residue; that a search of the car also revealed a number of unanswered parking summonses; that petitioner acknowledged that the fluid residue in two of the plastic bottles was methadone; that he had obtained it from his former employer, Macro Systems, where he had interviewed people in a methadone detoxification program; McGuire stated that he contacted the Parking Violation Bureau and was advised that petitioner had failed to answer a large number of parking citations; that the search of petitioner’s room also disclosed the 40 rounds of ammunition; that during the office visit of October 30, petitioner also admitted that he smoked marijuana on occasion; that petitioner also admitted that he had been in the company of Atlee Jones; that one Craig Brooks, another Parole Officer, *501 advised him, McGuire, that one Mary Boise had also stated that petitioner had lived with the said Atlee Jones.
Based upon its examination of the record of the parole violation hearing, the court finds that the evidence presented was insufficient to sustain charge (4) and charge (6). The proof of charge (4) whereby petitioner was accused of having been in the company of Atlee Jones was based upon statements made by Parole Officer Brooks and Mary Boise, neither of whom testified at the hearing. Petitioner, therefore, was denied his right to confront and to cross-examine these witnesses (People ex rel. Warren v Mancusi, supra; People ex rel. Sammarco v Le Fevre, supra).
There was no proof offered to sustain charge (6), whereby petitioner was accused of having stayed away from his approved residence without the consent of his parole officer, other than the hearsay testimony of Parole Officer Brooks and Mary Boise that petitioner "lived” with Atlee Jones. Such proof was, likewise, insufficient to sustain charge (6).
The court finds, however, that the evidence submitted was sufficient to sustain charges (1), (3) and (7). There is no merit to petitioner’s contention that the plastic bottles, the unanswered parking tickets and the ammunition were obtained as the result of an unlawful search and seizure. All inmates who are released on parole are required to execute a release agreement in a certain form (Rules of the Board of Parole, 7 NYCRR 1915.10). Subdivision (a) of section (4) of the form of agreement provides, in pertinent part, as follows: "I understand that I am legally in the custody of the department and that my person, residence, or any property under my control may be searched by my parole officer”.
Any parolee, therefore, expressly consents to a search of his person or residence as a condition of his parole. The failure to offer into evidence a copy of petitioner’s release agreement is of no consequence in view of the statutory requirement that such agreements contain certain uniform clauses. There is also no merit to petitioner’s contention that the search which revealed the ammunition was improperly conducted at his father’s residence. Since the residence of petitioner’s father was petitioner’s "approved residence” the search was proper.
There was also no necessity for scientific tests to determine the nature of the residue in two of the plastic bottles. McGuire testified that petitioner admitted this was methadone. Petitioner did not contradict this admission at the hearing.
*502 Once sufficient reasons for the action taken by the parole board have been shown, the determination as to which sanction to impose then becomes a discretionary matter with which the court should not interfere (Matter of Paulsen v Board of Parole, supra). The court, therefore, will not disturb the determination to revoke parole. Petitioner, however, correctly contends that he is entitled to be advised of the final hearing determination, including the reason for the determination and the evidence relied upon (7 NYCRR 1925.35 [1]). The parole board decision notice apprises petitioner of the decision, but does not contain a statement of the reasons or the evidence relied upon. Respondents, therefore, are directed to furnish petitioner with a statement of reasons and of the evidence relied upon within 15 days from the service of a copy of this decision and order with notice of entry.
Petitioner further argues that he is entitled to good behavior time allowances against the unexpired maximum of his sentence and that he has not received same since his reincarceration. In this respect subdivision 5 of section 803 of the Correction Law provides, in pertinent part, as follows: "Time allowances granted prior to any release on parole or prior to any conditional release shall be forfeited and shall not be restored if the paroled or conditionally released person is returned to an institution under the jurisdiction of the state department of correctional services for violation of parole * * * A person who is so returned may, however, subsequently receive time allowances against the remaining portion of his maximum or aggregate maximum term * * * provided such remaining portion of his maximum * * * term is more than one year” (emphasis supplied).
When petitioner was reincarcerated, the remaining portion of his maximum term was less than one year. Under subdivision 5 of section 803, therefore, he has not been allowed good time allowances. He contends that this statutory enactment denies him equal protection and is unconstitutional.
The principal guarantee of equality applicable in New York is the clause contained in the Fourteenth Amendment to the Federal Constitution which provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws.” The meaning of the term "equal protection” is not susceptible of precise definition. It is clear, however, that the protection afforded by the equal protection clause is not absolute (Matter of Cohen v Starke, 269 App Div 256) and that *503 the substance of the right is that all individuals similarly situated be treated alike. Accordingly, if a classification in legislation is reasonable and not arbitrary, and is based upon substantial distinctions with a proper relation to the objects classified and the purposes sought to be achieved, then as long as the law operates alike on all members of the class (including all persons and property similarly situated) it is not subject to any objection that it is special or class legislation, and it does not violate the guaranty of equal protection (NY Jur, Constitutional Law, § 297 and cases therein cited). To state it differently, equal protection is not denied when all persons in the same class are treated alike (People ex rel. Moffett v Bates, 276 App Div 38, affd 301 NY 597, cert den 340 US 865), and a declaration of unconstitutionality must be predicated upon a finding that members of the same class are treated unequally or differently (United States ex rel. McGill v Schubin, 475 F2d 1257).
In the court’s opinion subdivision 5 of section 803, as presently enacted, effects unequal treatment of inmates who have been paroled or conditionally released and have then been returned to custody, with respect to the allowance of good behavior credits. While the Attorney-General correctly contends that good behavior allowances must be earned with positive efforts (Correction Law, § 803, subd 1) and that there is no inherent right to demand such allowances (Correction Law, § 803, subd 4), there is no logical or reasonable basis for differentiating between violators who owe more than one year on their maximum sentences and those who owe less in determining whether they shall be eligible to receive good behavior allowances against the remaining portion of their sentences. Having, in one way or another, violated the terms of their parole or conditional release, these individuals are all members of the same class. Yet a parolee who, for example, owes one year and one day on his maximum sentence could receive good behavior allowances equal to one third of his remaining sentence and be eligible for release in 8 months, while a parolee who owed 11 months and 29 days would be ineligible for good behavior allowances and be required to serve his entire unexpired maximum. Such a procedure clearly discriminates against a certain segment of the class and results in unequal treatment.
Accordingly, respondents shall recompute petitioner’s sentence by allowing him any good behavior credits to which he *504 may have become entitled since his reincarceration and shall furnish petitioner with a recomputation of sentence within 10 days from the entry of this order.