■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. TERENCE McNEIL, by JOEL M. GOLUB, Respondent, v NEW YORK STATE BOARD OF PAROLE et al., Appellants. THE PEOPLE OF THE STATE OF NEW YORK ex rel. KENNETH DAVIS, Respondent, v NEW YORK STATE BOARD OF PAROLE et al., Appellants.—In habeas corpus proceedings, the appeals are from (1) so much of a judgment of the Supreme Court, Dutchess County, dated June 30, 1976, as, in the first above-captioned proceeding, held subdivision 5 of section 803 of the Correction Law to be unconstitutional as violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution, and (2) a further judgment of the same court, dated July 15, 1976, which, in the second above-captioned proceeding, *inter alia,* reached a similar conclusion as to the constitutionality of the aforesaid statute. Judgment dated June 30, 1976 reversed insofar as appealed from, on the law, without costs or disbursements, and the provision directing that petitioner be allowed "good behavior credits" is deleted therefrom. Judgment dated July 15, 1976 reversed, on the law, without costs or disbursements, and proceeding dismissed. The petitioner in the first above-captioned proceeding was released on parole from the Wallkill Correctional Facility on November 25, 1974. On January 15, 1976, following a parole revocation hearing, he was confined to the Greenhaven Correctional Facility as a parole violator and was ordered to be held for the 8 months and 18 days which were remaining on his sentence. The petitioner in the second above-captioned proceeding was conditionally released from the Elmira Correctional Facility on August 27, 1975. Subsequently, he was held to have been in violation of the terms of his release by the Parole Board and was ordered incarcerated until his maximum release date, in nine months and nine days. The State, in each instance relying upon subdivision 5 of section 803 of the Correction Law, refused to permit petitioners to earn good time credits (up to one third of their sentences) against the remainder of their respective maximum terms. In separate proceedings, each petitioner sought his release and attacked the statutory provision in question as being unconstitutional as violative of his right to equal protection of the laws. In each proceeding, a judgment was entered holding the statute to be unconstitutional on this ground and

permitting each petitioner to be credited with any good behavior allowances to which he may have been entitled since his subsequent incarceration. Subdivision 5 of section 803 of the Correction Law provides that a parole or conditional release violator who is returned to prison with less than one year remaining on his maximum term, is ineligible for good behavior time credit. The petitioners argue that the section discriminates, for purposes of good time eligibility, between those parole or conditional release violators who have more than one year left to serve and those who have less. They maintain that the distinction is wholly arbitrary and does not rationally serve any legitimate State policy. Moreover, they maintain that since a fundamental right, viz., liberty, is involved, we should employ the "strict scrutiny" test in analyzing the statute, rather than the "rational basis" test. The former test necessitates that there be a "compelling State interest" which demands different treatment and that no less restrictive method be available to satisfy such interests (see, e.g., *Memorial Hosp. v Maricopa County*, 415 US 250). We disagree. At stake is not the individual's fundamental right to liberty. Rather, the giving of good time credits to an inmate is a matter of legislative grace (see Correction Law, § 803, subd 1). Prisoners have no constitutional right to release prior to the maximum expiration date of their sentences. The fact that the Legislature saw fit to reward good behavior in no way makes the opportunity to earn good time credits, and thus secure an earlier release date, a fundamental right. *People ex rel. Wayburn v Schupf* (39 NY2d 682) is not to the contrary. There, in upholding the constitutionality of section 739 of the Family Court Act, which authorizes pretrial detention of youths charged as juvenile delinquents where a serious crime is involved, the court prefaced its remarks by stating that the "strict scrutiny" test should be applied since the individual's fundamental right to liberty was impinged upon. Clearly, as noted previously, such is not the case here. Turning to the merits of the cases here, we find that the statutory provision in question does not work a denial of equal protection since a rational basis exists for its enactment. In a legislative memorandum accompanying passage of this and a related statute (L 1969, ch 270), ample rationale for the one-year distinction is given as follows (NY Legis Ann, 1969, pp 32–33): "The amendments to Sections 803 and 805 of the Correction Law would restrict the re-release of conditional release violators. These amendments are proposed on the basis of experience with the existing legislation concerning conditional release. Present legislation permits any number of opportunities for conditional release from state institutions provided that an inmate will agree to the terms of conditional release and will accept a period of supervision. Experience, however, has shown that some inmates have no intention of abiding by the terms of conditional release but merely agree to accept the terms to obtain immediate release. Such insincere acceptance is made with the knowledge that they will again be eligible for re-release regardless of their conduct under supervision. This is best demonstrated by example where an inmate has earned sufficient 'good time' to permit his application for conditional release at a point where there are 11 months remaining on his total sentence. The sentence ceases to run upon acceptance of conditional release and the conditional release is required to remain under supervision for a period of one year. Where the conditional releasee completes his period of supervision, the sentence is terminated. The difficulty, however, develops in those cases where the individual has no intention of completing his period of supervision, but obtains conditional release only for the purpose of resuming either criminal or antisocial behavior. These persons, of course, are cited for violation of the

terms of conditional release and are returned to the institution. They, however, earn 'good time' on the 11 months or remaining portion of the sentence (that is one-third of the remaining portion of the sentence is deducted and the prisoner must serve only two-thirds of the 11 months before becoming eligible for conditional release again) and are re-released, with approximately three or four months remaining on their sentence. The performance under supervision is again repeated and they are once again returned but earn 'good time' on the balance of the sentence permitting re-release with a balance of about one month remaining on the sentence. This purposeless and costly procedure has occurred with no benefit to the community or to the individual. The individual who abuses the conditional release procedure, in fact, enjoys his 'ability' to 'frustrate' Parole Officers who are responsible for supervision and ridicules the inability of the Board of Parole to prevent re-release in an effective manner. The Board of Parole is required to provide a hearing regarding each violation and in many instances, where a few months remain on the sentence, learn that the violator has again applied for re-release. Some of these individuals subject the Board to ridicule pointing out that they don't care what the Board thinks and, further, that they will obtain release as often as they wish with no intention of making a serious effort towards adjustment. The amendments to Section 803 and 805 of the Correction Law will eliminate the repetitious and purposeless release of those persons who abuse the conditional release procedure. The amendment in no way will affect the sincere person who wishes to prove that he is prepared to make an effort to benefit from supervision. Conditional Releasees, generally speaking, are the poor parole risks, and parole violators who present the greatest potential as a threat to the community. Failure to provide effective control of this group encourages their misconduct to the detriment of the community." Moreover, in our opinion, the recent decision of *Matter of Foster v Smith* (52 AD2d 1088), in which the Fourth Department, in a detailed memorandum, held that the provision in question did not violate the equal protection clause, but rather was rationally designed to serve a legitimate State policy, as detailed in the 1969 legislative memorandum, was correctly decided. Accordingly, we hold that subdivision 5 of section 803 of the Correction Law has a rational basis and is thus not violative of the equal protection clause. Hopkins, J. P., Margett, Damiani and Rabin, JJ., concur. [87 Misc 2d 497.]