OPINION OF THE COURT
Albert Tomei, J.
The defendant, a 15 year old, was arrested on September 22, 1978 and charged with robbery in the second degree (Penal Law, § 160.10) an act for which a 15 year old may be held criminally responsible. (Penal Law, §§ 10.00, 30.00, as amd L 1978, ch 481.)
On September 28, 1978 a preliminary hearing was held and at the conclusion thereof this court found that there was reasonable cause to believe that the defendant committed the crime of robbery in the second degree while displaying an imitation gun;[1] an armed felony.[2]
Immediately thereafter, the defense renewed its motion for removal of the case "in the interests of justice” to the Family Court. The prosecutor stated that the District Attorney would not consent to removal of this armed felony and that, therefore, under CPL 180.75 (subd 4, par [b]), the court had no authority to remove the case and no discretion to make an inquiry respecting removal.
The defendant makes a two-fold argument (1), the failure to provide the defendant with an "in the interests of justice” judicial removal hearing to the Family Court where the defendant is charged with an armed felony denies defendant due process of law and renders CPL 180.75 (subd 4, par [b]) *118 unconstitutional, and (2), the failure to provide the "in the interests of justice” judicial removal hearing to the defendant deprives the defendant of his right to equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York State Constitution.
This court in considering the constitutional dimensions of the defendant’s motion reserved decision pending submission of memoranda of law by both the defendant and People.
The defendant in support of his position places great emphasis on Kent v United States (383 US 541) and its progeny and a New York State Court of Appeals case, People v Drummond (40 NY2d 990).
Although the defendant presents a rather persuasive argument, this court being ever mindful of the strong presumption of constitutionality attaching to a challenged statute (Weems v United States, 217 US 349, 366; Wasmuth v Allen, 14 NY2d 391, app dsmd 379 US 11; People v Broadie, 45 AD2d 649, affd 37 NY2d 100, cert den 423 US 950) and aware that courts of original jurisdiction do not ordinarily set aside a statute as unconstitutional unless such conclusion is inescapable (Matter of Van Berkel v Power, 16 NY2d 37, 40; Matter of Fay, 291 NY 198, 206-207; People v Crane, 214 NY 154, 173, affd 239 US 195) is not althogether convinced beyond a reasonable doubt that the statute in question denies the defendant due process of law and/or deprives him of the equal protection of the law.
THE STATUTE
In September of 1978 the New York State Legislature in response to the problem of serious juvenile crime enacted a tough crime bill which included provisions that radically altered the manner in which serious or violent juvenile offenders were to be treated by the New York courts. This bill expanded the jurisdiction of the adult criminal court system to encompass certain enumerated felonies committed by 13, 14 and 15 year olds.[3] Section 33 of chapter 481 of the Laws of *119 1978 amended the CPL by adding a new section 180.75 which sets forth the required procedures for treatment in the criminal court of a juvenile offender charged with a felony.[4]
*120 CPL 180.75 (subd 4, par [a]) provides for mandatory removal of a nonarmed felony to the Family Court in the interests of justice if the District Attorney requests such removal. Also, the court, sua sponte, or upon motion of the defendant may order such removal, in the interests of justice. Further, it states unequivocally that where the complaint charges murder in the second degree or an armed felony* ***[5] said removal in the interests of justice is not applicable.
CPL 180.75 (subd 4, par [b]) gives the court discretion to remove an armed felony only if the District Attorney consents to removal and only if the court after making inquiry finds one of the following factors — "(i) mitigating circumstances that bear directly upon the manner in which the crime was committed; or (ii) where the defendant was not the sole participant in the crime, the defendant’s participation was relatively minor although not so minor as to constitute a defense to the prosecution; or (iii) possible deficiencies in proof of the crime”.
KENT
The defendant contends that notwithstanding the aforementioned statutory language of CPL 180.75 (subd 4, par [b]) that Kent v United States (383 US 541, supra), constitutionally mandates an "in the interests of justice” judicial removal hearing. That the Supreme Court held in Kent that the determination as to whether a juvenile shall be charged and adjudicated in juvenile court (Family Court) or in the adult system was a "critical stage” in the proceedings which entitled him to the protection of the due process clause under the Fourteenth Amendment of the United States Constitution.[6]
This court believes that a brief review of the facts in Kent is *121 warranted to show the material difference between New York’s statute and the District of Columbia statute which affected, the juvenile, Kent.
In Kent v United States (383 US 541, supra) the District of Columbia statute gave the juvenile court exclusive jurisdiction over a youth accused of a crime. The statute provided that the juvenile court Judge had the discretion to waive this exclusive jurisdiction and transfer the case to the District Court, if "after full investigation,” the Judge determined that the juvenile was not a suitable subject for rehabilitation. The juvenile court Judge in Kent ignoring a request made by the attorney for Kent for a waiver hearing, blithely declared, without holding a hearing or making any findings of fact, that after full investigation he had decided to order Kent held for trial in the District Court.
Calling the waiver decision "critically important,”[7] the Supreme Court ruled that before jurisdiction could be waived there had to be a hearing with effective assistance of counsel and that the waiver order had to be accompanied by a statement of reasons for the decision.[8]
Although the defendant is quick to point to the Supreme Court’s recognition that the waiver decision was a "critical stage” in the proceedings, he fails to mention the distinguishing and underlying basis for such delineation and characterization. "It is clear beyond dispute that the waiver of jurisdiction is a 'critically important’ action determining vitally important statutory rights of the juvenile”. (Kent v United States, 383 US 541, 556, supra.) And, "[t]he net, therefore, is that the petitioner — then a boy of 16 — was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the 'exclusive’ jurisdiction of the Juvenile Court.” (Supra, p 557; emphasis supplied.)
It was only because the statute had given Kent this statutory right to be treated as a juvenile that some kind of hearing was held to be necessary before that "entitlement” could be taken away. Moreover, and unlike the District of Columbia statute, New York’s statute places original and exclusive jurisdiction over the defendant, Lugo, in the criminal court. Thus, he possesses no statutory right to treatment as a juvenile.
*122 Another distinguishing factor is that in Kent the determination of original jurisdiction was a judicial one rather than, as in this case, a legislative one. This court notes with interest that none of the cases cited by the defendant center on the very issue before this court but, instead all focus on the issue of "judicial waiver” from a juvenile court to an adult criminal court.[9] This court is unaware of any decisions either State or Federal that have judicially condemned a legislative body for having limited a particular juvenile court’s jurisdiction by excising therefrom certain crimes committed by juveniles and placing those crimes under the original and exclusive jurisdiction of the adult criminal court. To the contrary, see United States v Bland (472 F2d 1329, cert den 412 US 909); Cox v United States (473 F2d 334, cert den 414 US 869); United States v Alexander (333 F Supp 1213); Woodward v Wainwright (556 F2d 781);[10] Broadway v Beto (338 F Supp 827, affd 459 F2d 483, cert den 409 US 1012); United States v Quinones (353 F Supp 1325, affd 516 F2d 1309, cert den 423 US 852); United States ex rel. Walker v Maroney (444 F2d 47) all in effect holding that under their particular statutory scheme as under the New York statute, the placement of exclusive jurisdiction over a special class of juvenile offenders in the adult criminal courts by an "informed” Legislature does not warrant a Kent v United States (383 US 541, supra) inquiry or make Kent applicable.
In fashioning the newly enacted statute the New York *123 Legislature was careful to extend to all juvenile offenders the full panoply of due process rights possessed by other adult criminal defendants. The accused under the challenged statute is given every right which adults receive, relative to arraignment, counsel, bail, preliminary proceedings and release upon failure of timely disposition, all of which apply without distinction as to age. (See CPL 180.60, 180.80.)
Whereas in Kent, the defendant upon transfer was jailed with adults, the New York Legislature anticipating the dramatic impact of adult prosecution on juvenile offenders, provided pursuant to CPL 510.15 and section 515-b of the Executive Law special and separate facilities for detained and convicted juvenile offenders. Section 515-b of the Executive Law requires that the facilities provide "services to juvenile offenders including but not limited to residential care, educational and vocational training, physicial and mental health services, and employment counseling.”
Considering the crucial distinction between Kent v United States (383 US 541, supra) and the case at bar and in view of the fact that the New York statute is flexible enough to provide all juvenile offenders with a full complement of due process protections and at the same time retain many of the lenient and rehabilitative aspects of the juvenile court system this court is constrained to find defendant’s reliance on Kent to be woefully misplaced.
DRUMMOND
Pursuing his due process argument further, the defendant points to the New York State Court of Appeals case of People v Drummond (40 NY2d 990, supra). In Drummond, the unconstitutional statute, CPL 720.10, made eligibility for youthful offender treatment after conviction dependent on the seriousness of the felony charged in the instrument rather than the seriousness of the felony of which the juvenile was ultimately convicted.
Under the statute, a defendant indicted for a class A felony was barred from youthful offender treatment even if convicted for a lesser offense. This statute was held to violate due process in that such discrimination based solely on a "mere allegation” was arbitrary.
Contrary to Drummond, the defendant, herein, although initially charged in a criminal complaint with being an "armed felon,” is not forever foreclosed from having his case removed to the Family Court and being treated as a juvenile *124 in a juvenile setting. The door to the Family Court is always open at every level of the criminal court proceedings. The District Attorney may recommend removal both after indictment and after verdict (CPL 220.10, subd 5, par [h], cl [iii]; 330.25). Both the Grand Jury and petit jury have the power to remove the case without the District Attorney’s consent by a finding that the defendant is guilty only of a crime for which he is not criminally responsible (CPL 190.71, 310.85).
Moreover, as opposed to People v Drummond (40 NY2d 990, supra) the defendant cannot be indicted for or convicted of any lesser offense than robbery in the second degree without being removed to Family Court (CPL 190.71, 310.85).[11] Thus, the Drummond anomaly cannot occur, and it is abundantly clear that, under the statute, "mere allegations” cannot determine whether the defendant will ultimately be placed under the jurisdiction of the juvenile court or not.
In light of the fact that New York’s statutory scheme in signaling out certain juveniles charged with certain crimes is neither unusual nor constitutionally unsound, and further, that there exists no constitutional right to juvenile treatment (United States v Rombom, 421 F Supp 1295; Broadway v Beto, 338 F Supp 827, affd 459 F2d 483, cert den 409 US 1012, supra; Stokes v Genakos, 441 F supp 147; People v Jiles, 43 Ill 2d 145), it follows ineluctably that the statutory provision for removal of certain cases to the Family Court must be considered a privilege and beneñt and not a right.
Inasmuch as the removal provisions are a matter of legislative grace, the Legislature’s further qualification and restriction of this "benefit” in the form of CPL 180.75 (subd 4, par [b]) is not violative of the defendant’s due process rights and provided said classification is neither "arbitrary or invidious,” *125 it is not a violation of defendant’s rights under the equal protection clause of the Constitution.
PROSECUTORIAL DISCRETION
As a corollary to defendant’s due process argument, the defendant avers that the prosecutor’s power to condition an "armed felony” removal hearing on his consent pursuant to CPL 180.75 (subd 4, par [b]) is an infringement upon and a usurpation of the court’s power to hold an "in the interests of justice” removal hearing where the defendant is charged with an armed felony.
The prosecutor’s power to charge or not to charge a crime to charge a greater or lesser crime, to charge one defendant and not his codefendant, are powers which have been traditionally recognized and validated time and time again by our courts. This concept of "deference to prosecutorial discretion”, is one which has deep historical roots in our judicial system and the exercise of such discretion has never been subject to judicial supervision or review, absent the deliberate presence of some unjustifiable standard of selection such as race, religion, or other arbitrary classification. (United States v Bland, 472 F2d 1329, 1336, supra; Russell v Parratt, 543 F2d 1214.)
In Cox v United States (473 F2d 334, cert den 414 US 869, supra) it was held that Congress could legitimately vest in the Attorney General rather than a Judge in a judicial proceeding, the responsibility of deciding whether or not to prosecute a juvenile as an adult. (See, also, United States v Quinones, 353 F Supp 1325, affd 516 F2d 1309, cert den 423 US 852, supra; Ramirez v United States, 238 F Supp 763; Russell v Parratt, supra; and People v Jiles, 43 Ill 2d 145, supra.)[12]
Not only may Congress and the various State Legislatures vest discretionary power in a prosecutor to determine whether an offender should be prosecuted as a juvenile or as an adult, but they may grant this discretionary power generally without providing any statutory guidelines for the exercise of discretion. See Woodward v Wainwright (556 F2d 781, 786, supra) and United States v Bland (472 F2d 1329, 1336-1337, supra) holding that the prosecutor’s power to deprive the juvenile court of jurisdiction through the use of his charging discretion without holding a hearing to be consonant with due process.
*126 Clearly, if a prosecutor, State or Federal, has the power to divest the juvenile court of jurisdiction in the first instance through his discretion in initiating the prosecution and setting the charge a fortiori, he can exercise his discretion to continue the prosecution in his chosen forum by refusing to consent to removal. The consent decision is but another of the prosecutor’s widely recognized powers and like other prosecutorial, rather than judicial actions, need not be preceded by a hearing.
EQUAL PROTECTION
In urging his equal protection claim, the defendant says that CPL 180.75 (subd 4, par [b]) operates to deny the defendant a fundamental due process right (a judicial jurisdictional determination) on the basis of an arbitrary and invidious classification: the statute allows such a determination to be made for all juveniles charged with offenses for which they may be criminally responsible with the exception of those charged with armed felonies, including as in this case, offenses in which only "what appears to be” a firearm is used.[13]
Since fundamental rights as due process and liberty (the defendant faces mandatory loss of liberty if convicted in the adult system, Penal Law, §60.10, subd 1) are involved this court is urged to adopt as a standard of review the "strict scrutiny” test.
In addressing equal protection claims, the court’s have traditionally looked to two tests, "strict scrutiny” and "rational relationship.” The strict scrutiny test is applicable only in a very limited number of cases where the challenged classification operates to the disadvantage of some suspect class or impinges upon a fundamental right protected by the Constitution. (San Antonio School Dist. v Rodriguez, 411 US 1.)
The defendant’s claim that the removal provision operates to deprive him of an interest in liberty, a "fundamental interest”, does not fall within the operative definition of "fundamental interests” as articulated in San Antonio School Dish v Rodriguez (411 US 1, 33-34, supra) holding that an interest is fundamental for the purposes of equal protection if it is based on rights "explicitly or implicitly guaranteed by the Constitution.”
*127 As this court earlier stated in analyzing defendant’s due process plea, the operation of CPL 180.75 serves only to require the case to be held for the Grand Jury: the defendant is only deprived of his liberty if found guilty of a crime which he is criminally responsible by a petit jury. Whereas People ex rel. Wayburn v Schupf (39 NY2d 682, cited in support by the defendant) involved a direct and immediate threat to liberty in the form of a pretrial detention statute for juveniles. The defendant, herein during the course of the prosecution, like any adult defendant, may take advantage of the adult bail provisions.
And finally, as earlier discussed, removal is a privilege and a matter of legislative grace: that the Legislature saw fit to make the standards for removal less restrictive for those who commit less serious offenses in no way makes the more lenient dispositions of the Family Court which do not include mandatory sentences a fundamental right. (People ex rel. McNeil v New York State Bd. of Parole, 57 AD2d 876.) Clearly, if there is no fundamental interest involved, the strict scrutiny test is not applicable, and thus, this court must look to the rational relationship test as the appropriate standard of review.
Under the rational relationship test, the challenged classification must bear a reasonable relationship to the object of the legislation (Reed v Reed, 404 US 71, 76) and at the very least, "some relevance to the purpose for which the classification is made”, must be shown. (Baxtrom v Herold, 383 US 107, 111.)
The defendant asserts that the discriminatory classification in the case at bar bears no rational relationship to the State’s interest (public safety); that the definition of "armed felony” is itself arbitrary in that it includes harmless toy guns, while excluding dangerous knives and other instruments; that other "armed felonies” involving juveniles, such as criminal possession of a dangerous weapon (Penal Law, §§ 265.03, 265.04) and attempted robbery (Penal Law, §§ 110.00, 160.10, 160.15) are totally exempt from criminal court jurisdiction; and the State’s asserted interest in public safety is neither rationally nor legitimately satisfied by a statutory classification that fails, for the purposes of determining jurisdiction over the juvenile, to consider in toto, the needs and background of the juvenile and the circumstances giving rise to the offense.
Although this statutory legislation is devoid of any statu *128 tory history and admittedly is a novel approach[14] and possible solution to the dramatic and explosive growth of serious and violent juvenile crime, this court is careful to observe that criminal statutes carry with them the strong presumption that the Legislation has found facts indicating a need for the enactment. (Matter of Taylor v Sise, 33 NY2d 357; I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269; East N. Y. Sav. Bank v Hahn, 293 NY 622, 628, affd 326 US 230.) Further, in reviewing this legislation this court is bound by the. time-honored principle of statutory construction that mandates "in construing statutes * * * they [courts] do not sit in review of the discretion of the Legislature or determine the expediency, wisdom, or propriety of its action on matters within its powers.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 73; People v Williams, 97 Misc 2d 24.)
It would indeed be naive for this defendant or any other defendant similarly situated to believe that the New York Legislature in proposing and enacting this legislation acted out of a "societal vacuum.” Rather, one must assume (an assumption that is documented daily by our news media) that the Legislature considered the level and number of crimes committed by 13, 14 and 15 year olds and concluded that the parens patriae role of the Family Court was not meeting the demands and needs of the public.
Faced with a real and growing threat to the public safety, the Legislature selected those crimes which they felt posed the most serious threat to the personal safety of the citizens of New York, i.e., murder, kidnapping, arson, assault, etc. The possibility of immediate and grave physical harm inherent in these crimes sufficiently distinguishes them from other crimes and makes readily apparent the legislative concerns, which motivated the imposition of criminal responsibility for these crimes on 13, 14 and 15 year olds.
No less compelling, but less obvious, are the factors which distinguish armed felonies from other felonies. The logic behind the legislative view underlying CPL 1.20 (subd 41), i.e., that guns, whether operable or not are inherently more dangerous and more likely to lead to violence than other weapons, is demonstrably sound.
Common sense tells us that guns are extremely effective death producing instruments and that they harm society by *129 making it easy to injure or kill its members. They are capable of inflicting serious or fatal injuries on a large number of people over greater distances with less effort and with less risk to the attacker than any other weapon.
As a corollary to the above, society also suffers significant harm when guns are displayed and not actually fired. Since people know that guns can fire rapidly and repeatedly, a gun wielder is able to victimize a greater number of people at one time than someone carrying a knife or other weapon.
All of the afore-mentioned factors make a criminal displaying a gun inherently more dangerous to society than a criminal displaying any other type of weapon. Moreover, since most victims cannot distinguish between operable and inoperable guns, criminals carrying inoperable guns pose an almost equally significant threat to society. Accordingly, the rationale behind the legislative action in distinguishing crimes involving both operable and inoperable guns from crimes involving other types of weapons was entirely reasonable and appropriate.
Thus, by making removal of an armed felony to the Family Court at the preliminary hearing stage dependent on the consent of the District Attorney, the Legislature was expressing a sound and rational belief that these crimes are inherently more threatening to society and accordingly, require a more significant response. The power to assess the societal significance of particular acts is vested primarily in the officer whose duty it is to enforce the criminal laws and who possesses the power to decline prosecution or charge a lesser offense in the first place. That the Legislature had the authority to grant such power to the prosecution has already been established.
As for defendant’s contention that it was irrational not to include possession of a weapon and attempted robbery within the classification of an armed felony, surely the Legislature may conclude that there is an important distinction between (1) possession of a weapon and actually using a weapon to further the commission of a crime and (2) attempting the commission of a crime which may involve only preliminary preparatory steps and successfully carrying out a crime leaving no doubt about either intent, competence or dangerousness.
Although this court is constrained by precedent, logic and statutory construction to deny the defendant’s motion, this court is aware from its own experience, an experience that *130 has been corroborated by the New York Times[15] in its analysis of court records and by members of the New York State Legislature that far too often many of the juvenile offenders coming before this court are being "overcharged” by the District Attorney’s office and consequently those cases (robberies which are in essence petty thefts) which should have originated in the Family Court are needlessly processed in the criminal courts at great personal cost to the individual juvenile and the taxpayers of this State. In order to avoid any further injustices, this court invites the Legislature to study this new law more thoroughly and amend it so as to insure that only those who commit truly serious crimes are initially treated as adults in the criminal courts.
Therefore, the motion is denied in all respects and defendant is ordered held for the Grand Jury.

. The minutes of the preliminary hearing reflect that the defendant and four others robbed this complaining witness, Antonio Torres, a taxicab driver, at gun point at approximately 3:20 a.m. on September 22, 1978. The testimony of Mr. Torres depicted the defendant entering the cab without permission, pointing a pistol at Mr. Torres’ face and making a demand for money. In response to both the demand and the presence of the pistol, Mr. Torres handed over his money and his watch. Mr. Torres further testified that at the time the defendant was pointing the gun at him during the robbery, he believed the gun to be real. It was only after Mr. Torres handed over his property to the defendant and the defendant pulled the trigger and the gun failing to fire, did Mr. Torres realize that the gun was not operable.

. CPL 120 (subd 41) defines an "armed felony” as any violent felony offense defined in section 70.02 of the Penal Law including as an element either:
"(a) possession, being armed with or causing serious physical injury by means of a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious physical injury may be discharged; or
"(b) display of what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.”

. "Juvenile offender” crimes (Penal Law, § 10.00, subd 18; CPL 1.20, subd 42; 190.71). A "juvenile offender” is a person 13, 14, or 15 years old who is charged with second degree murder or a person 14 or 15 years old who is charged with one or more of the following felonies: attempted second degree murder; first degree kidnapping; attempted first degree kidnapping; first degree arson; second degree arson; first degree assault; first degree manslaughter; first degree rape; first degree sodomy; first degree burglary; second degree burglary; first degree robbery; second degree robbery.

. "§ 33. Such law is hereby amended by adding a new section 180.75 to read as follows [L 1978, ch 481, § 33]:”
§ 180.75 Proceedings upon felony complaint; juvenile offender.
"1. When a juvenile offender is arraigned before a local criminal court, the provisions of this section shall apply in lieu of the provisions of sections 180.30, 180.50 and 180.70 of this article.
"2. If the defendant waives a hearing upon the felony complaint, the court must order that the defendant be held for the action of the grand jury of the appropriate superior court with respect to the charge or charges contained in the felony complaint. In such case the court must promptly transmit to such superior court the order, the felony complaint, the supporting depositions and all other pertinent documents. Until such papers are received by the superior court, the action is deemed to be still pending in the local criminal court.
"3. If there be a hearing, then at the conclusion of the hearing, the court must dispose of the felony complaint as follows:
"(a) If there is reasonable cause to believe that the defendant committed a crime for which a person under the age of sixteen is criminally responsible, the court must order that the defendant be held for the action of a grand jury of the appropriate superior court, and it must promptly transmit to such superior court the order, the felony complaint, the supporting depositions and all other pertinent documents. Until such papers are received by the superior court, the action is deemed to be still pending in the local criminal court; or
"(b) If there is not reasonable cause to believe that the defendant committed a crime for which a person under the age of sixteen is criminally responsible but there is reasonable cause to believe that the defendant is a 'juvenile delinquent’ as defined in subdivision (a) of section seven hundred twelve of the family court act, the court must specify the act or acts it found reasonable cause to believe the defendant did and direct that the action be removed to the family court in accordance with the provisions of article seven hundred twenty-five of this chapter; or
"(c) If there is not reasonable cause to believe that the defendant committed any criminal act, the court must dismiss the felony complaint and discharge the defendant from custody if he is in custody, or if he is at liberty on bail, it must exonerate the bail.
"4. Notwithstanding the provisions of subdivisions two and three of this section, (a) the court, on motion of any party or on its own motion may, and shall, at the request of the district attorney, order removal of an action, except one involving a complaint charging a juvenile offender with murder in the second degree, or an armed felony as defined in subdivision forty-one of section 1.20 of this chapter, to the family court pursuant to the provisions of article seven hundred twenty-five of this chapter, if it is determined that to do so would be in the interests of justice;
"(b) the court may, with the consent of the district attorney, order removal of an action involving a complaint charging a juvenile with murder in the second degree, or an armed felony as defined in subdivision forty-one of section 1.20 of this chapter, to the family court pursuant to the provisions of article seven hundred twenty-five of this chapter provided, however, that a determination that such an action should be removed to the family court shall be based solely upon one or more of the following factors: (i) mitigating circumstances that bear directly upon the manner in which the crime was committed; or (ii) where the defendant was not the sole participant in the *120 crime, the defendant’s participation was relatively minor although not so minor as to constitute a defense to the prosecution; or (iii) possible deficiencies in proof of the crime;
"(c) the district attorney shall state upon the record the reasons for his consent to removal of the action to the family court.
"5. For the purpose of making a determination pursuant to subdivision four hereof, the court may make such inquiry as it deems necessary.”

. See n 2, supra.

. The defendant relies on the following proposition as set forth by the Supreme Court: "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony — without hearing, without effective assistance of counsel, without a statement of reason. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner.” (Kent v United States, 383 US 541, 554, supra.)

. 383 US 541, 556, 560, supra.

. 383 US 541, 554, 557, supra.

. Breed v Jones, 421 US 519; Kemplen v Maryland, 428 F2d 169; United States ex rel. Pedrosa v Sielaf, 434 F Supp 493; Geboy v Gray, 471 F2d 575; Powell v Hocker, 453 F2d 652; United States ex rel. Turner v Rundle, 438 F2d 839; Haziel v United States, 404 F2d 1275; Stokes v Genakos, 441 F Supp 147; Pollard v Riddle, 420 F Supp 175; Miller v Quatsoe, 332 F Supp 1269; State ex rel. T.J.H. v Bills, 504 SW2d 76 [Mo.]; People v Rahn, 59 Ill 2d 302; Matter of Gault, 387 US 1, did not even touch on the question of jurisdiction).

. In Woodward v Wainwright (556 F2d 781, supra) the Florida Legislature enacted a statute which automatically divested the juvenile court of jurisidiction over persons indicted for crimes punishable by life imprisonment or death. No provision was made for a waiver hearing prior to adult prosecution of these offenses. In upholding this statutory scheme against constitutional challenge, the Court of Appeals noting that the legislative determination underlying the statute should be accorded great weight by the courts stated (supra, p 785) the following: "Doubtless the Florida legislature considered carefully the rise in the number of crimes committed by juveniles as well as the growing recidivist rate among this group. The legislature was entitled to conclude that the parens patriae function of the juvenile system would not work for certain juveniles, or that society demanded greater protection from these offenders than that provided by that system. We should not second-guess this conclusion.”

. If the Grand Jury determines that the allegations of robbery in the second degree are unwarranted and that only some lesser crime was committed, they cannot indict the defendant for robbery in the second degree and may file a request to have the case removed to Family Court. If the Grand Jury files such a request, the court must remove the case. The District Attorney has nothing to say in the matter. If the Grand Jury does not file a removal request, presumably the case must be dismissed since the Grand Jury cannot indict the defendant for a crime for which he is not criminally responsible and any lesser offense than robbery in the second degree is such a crime (CPL 190.71). Similarly, if the defendant is indicted for robbery in the second degree, but convicted of any lesser offense (i.e., a crime for which he is not criminally responsible), the court must order that the verdict be vacated and replaced by a juvenile delinquency fact determination. Then the case must be removed to Family Court (CPL 310.85).

. As the court stated in People v Jiles (43 Ill 2d 145, 148-149, supra): "while it may be highly desirable to commit to the judge of a specialized juvenile court the determination of whether or not a particular juvenile is to be prosecuted criminally, we are aware of no constitutional requirement that a State must do so.”

. Defendant’s brief, pp 18-19.

. Peyser, The New Juvenile Offender Law in New York, NYLJ, Sept. 27, 1979, p 1, col 1.

. G.O.P. seeks softer Juvenile Law, New York Times, Nov. 17, 1978, p A12, col 5; Few suspects treated as adults under Youth Law, New York Times, Nov. 16, 1978, p Al, col 5.